**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

HERLANDOS McCREE,

       Plaintiff,                                 CASE NO. 08-14185
                                                    HON. LAWRENCE P. ZATKOFF

v.

LEXINGTON VILLAGE APARTMENTS
and AMURCON CORPORATION,

       Defendants.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on the 11th day of March, 2010

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Defendants' Motion for Summary Judgment (Docket #31). Pro se Plaintiff did not file a timely response, and on December 10, 2009, the Court issued Plaintiff an Order to Show Cause why this case should not be dismissed. The December 10, 2009, Order to Show Cause required Plaintiff to file a response by January 8, 2009. The Order to Show Cause was sent to Plaintiff via U.S. Mail at the address reported by Plaintiff to the Clerk's Office of the Eastern District of Michigan, as it appears on the Docket for this case. The envelope containing the Order to Show Cause was returned to the Court as undeliverable on December 17, 2009 (Docket #41). On January 26, 2010, the Court sent a substantively identical Order to Show Cause to Plaintiff at the address she indicated she now resided (this address was provided by Plaintiff at her August 12,

2009, deposition and was included in Defendants' Brief in Support of their Motion for Summary Judgment) (Docket #43). This second Order to Show Cause required Plaintiff to file a response by February 19, 2010. As of the date of this Opinion and Order, the Court has not received the envelope back as undeliverable and Plaintiff still has not filed a response. The Court has reviewed all documents filed by Plaintiff in this case to determine if there is any evidence or information relevant to the issues set forth by Defendants in their Motion for Summary Judgment. The Court finds that the facts and legal arguments pertinent to the Motion for Summary Judgment are adequately presented in the parties' papers, and the decision process will not be aided by oral arguments. Therefore, pursuant to E.D. Mich. Local R. 7.1(e)(2), it is hereby ORDERED that the Motion be resolved on the brief submitted by Defendants, as well as the papers filed by Plaintiff, without this Court entertaining oral arguments. For the reasons that follow, Defendants' Motion for Summary Judgment is GRANTED.[1]

## II. BACKGROUND

Plaintiff claims that Defendants discriminated against her right to housing under the Fair Housing Act, 42 U.S.C. § 3604(f)(2)(A), based on her alleged disability. Plaintiff does not specify what her disability is, though she mentioned in her Complaint that she had a broken tibia and has depression. Plaintiff has not provided any medical records or related documentation that supports

---

[1] The Court also GRANTS Defendants' Ex Parte Motion to File Amended and Revised Brief in Support of Motion for Summary Judgment (Docket #34), as the Court finds that doing so will promote the interests of justice and narrow the issues before the Court. This motion and the amended brief were prepared after the dispositive motion cut-off date (a timely motion for summary judgment had been filed prior to the dispositive motion cut-off), but they were prepared immediately after Defendants were finally able to depose Plaintiff, who had to be ordered to appear for deposition after numerous delays.

either of those conditions. Instead, the focus of Plaintiff's case is that Defendants harassed, intimidated, and discriminated against her while she leased an apartment from them, including: (1) threatening eviction on four separate occasions; (2) failing to take action against another tenant who allegedly assaulted her; and (3) failing to take action against other tenants whose children allegedly vandalized Plaintiff's car.

On March 16, 2005, Plaintiff and Defendant Lexington Village Apartments ("Lexington Village") entered into a lease agreement for a 2-bedroom apartment located at 7858 Poe St. in Detroit, Michigan. Plaintiff is a single, low-income renter who has been receiving income-based federal housing assistance. Lexington Village is a multi-building complex comprised of town-home and garden apartment buildings and a high rise senior apartment building located in the City of Detroit. Defendant Amurcon Corporation ("Amurcon"), which manages Lexington Village, provides subsidized housing to eligible tenants through the Department of Housing and Urban Development's ("HUD") Low Income Housing Tenant Tax Credit ("LIHTC") program and HUD's Section 8 housing assistance program.

**A.     The Assault**

Plaintiff alleges that her mother's boyfriend assaulted Plaintiff in her mother's apartment in the Lexington Village Senior Building in April 2006. Plaintiff did not submit a complaint to, or otherwise notify, Amurcon regarding the incident until November 2007, at which time she spoke to Amurcon Area Director Forrest Babcock ("Babcock"). In a letter dated December 3, 2007, Babcock advised Plaintiff that due to: (a) the length of time since the incident, and (b) its familial nature, neither Amurcon nor Lexington Village would take any action. Babcock explained that the only action Lexington Village could take would be to evict Plaintiff's mother, per Lexington Village

3

policy, for allowing a dangerous individual into her home. Plaintiff told Babcock that she did not want this to occur.

**B.     Car Vandalism**

Plaintiff alleges that her neighbors' children broke her car windshield on June 15, 2006. Lexington Village Property Manager, Lynette Robertson, requested a copy of the police report from Plaintiff in a letter dated June 16, 2006. Lexington Village management also arranged for a meeting to take place on June 19, 2006, between the children's parents and Plaintiff. Plaintiff failed to attend that meeting, however, and did not attempt to reschedule it with Lexington Village.

**C.     Eviction Notices**

*1.     Failure to pay rent*

The lease that Plaintiff entered into on March 16, 2005, states, in pertinent part:

> 23.     Termination of Tenancy
>
> > d.     The LANDLORD may terminate this Lease Agreement for the following reasons:
> >
> > > (1)     the TENANT's material noncompliance with the terms of this Lease Agreement.

On April 10, 2006, Lexington Village served Plaintiff with a Notice to Quit for non-payment of rent. At the time, Plaintiff had an outstanding balance of $457.00 with Lexington Village for rent that was due "on or before the first calendar day" of the month. The notice stated, in pertinent part:

> **PLEASE BE ADVISED THAT CONTINUED FAILURE TO PAY THE RENT WHEN DUE CONSTITUTES A VIOLATION OF YOUR LEASE AND COULD RESULT IN THE TERMINATION OF YOUR OCCUPANCY.**

On April 19, 2006, Plaintiff and Lexington Village entered into a repayment agreement and Lexington Village let the April 10, 2006, Notice to Quit lapse.

By May 10, 2006, however, Plaintiff had failed to comply with the repayment agreement. Lexington Village sent Plaintiff another Notice to Quit for non-payment of rent because Plaintiff's balance of rent owed to Lexington Village equaled $487.00. This Notice to Quit contained the same clause found in the April letter, and Plaintiff again was advised of the consequences of continuing to fail to pay her rent on time. Within seven days of the May 10, 2006 Notice to Quit being issued, Plaintiff paid the rent owed. Accordingly, Lexington Village took no action to evict Plaintiff based on the May 10, 2006, Notice to Quit.

2. *LIHTC ineligibility*

In the fall of 2007, Lexington Village learned that Plaintiff had become a full-time student. As a consequence, by letter dated December 21, 2007, Lexington Village notified Plaintiff that, as of June 1, 2007, Plaintiff became ineligible to reside in Lexington Village because all residents of her household were students. The letter included a notice to vacate within thirty (30) days due to Plaintiff's failure to remain LIHTC eligible. Lexington Village sent the letter in reliance on LIHTC regulations, as explained by the Michigan LIHTC Compliance Manual (the "Manual"). The Manual provides, in pertinent part that:

> Under LIHTC regulations, if a single applicant (or present tenant) or all applicants (or present tenants in a unit) are full-time students and not married, then that household is usually not eligible to reside in an LIHTC unit, unless it meets one or more of the student exemptions discussed below.

Plaintiff did not qualify for any of the exemptions in the LIHTC regulations. Plaintiff was over 24, however, so she remained eligible for Section 8 assistance despite her status as a student.

At the time, however, based upon Section X of the Manual, Lexington Village believed that a more restrictive LIHTC requirement with regard to student residents applied. The Manual states, in a section entitled "Interfacing LIHTC with Other Government Housing Programs," as follows:

5

> In addition to the LIHTC, many developments are also financed with and/or regulated by other government housing programs. Such programs include Section 8, Rural Development, HOME, etc. These projects may have different income and rent targeting restrictions. In addition, sometimes, the requirements of the different housing programs conflict with LIHTC requirements. . . . <u>As a general rule, the owner/management agent must comply with requirements of the housing program that is most restrictive on a particular issue, unless IRS regulations specifically indicate an exception to the requirement</u>.

*Id.* (emphasis added). In the December 21, 2007, letter, Lexington Village advised Plaintiff that she could request an informal hearing to address the matter in writing, within 10 days of the letter's date.[2]

On February 12, 2008, Babcock met with Plaintiff to discuss: (a) the December 21, 2007, termination notice, and (b) several options by which Plaintiff could remain eligible for housing at Lexington Village, including job retraining, being a part-time student, and adding another resident to the lease. On March 4, 2008, Babcock wrote to Plaintiff and informed her that if she could find a non-student roommate by March 20, 2008, she could be reinstated as a LIHTC qualified resident. On March 18, 2008, Plaintiff attempted to add Cri Cri Snead ("Snead") to her lease, and Plaintiff completed pre-lease paperwork to that effect. Snead never moved in with Plaintiff, however, and Babcock again wrote to Plaintiff on March 26, 2008, to inform her that, as she had still failed to achieve LIHTC eligibility, it was Lexington Village's intention to terminate her residency. On May 28, 2008, Lexington Village served Plaintiff with another Notice to Quit because Lexington Village

---

[2] On January 22, 2008, Plaintiff filed a complaint with HUD, alleging discrimination. After reviewing the complaint and speaking with Plaintiff, HUD closed the complaint stating that it did not meet the jurisdictional requirements of the FHA. HUD found that Lexington Village's non-action with respect to Plaintiff being assaulted by her mother's boyfriend in April 2006 was not a prohibited practice under the FHA.

believed that Plaintiff had to satisfy the restrictive requirements of the LIHTC program to remain in her unit.

Plaintiff then filed a second complaint with HUD. In a letter dated August 21, 2008, HUD advised Plaintiff that her Section 8 assistance could not be affected by her LIHTC ineligibility. A copy of the letter was sent to Babcock, who contacted the Michigan State Housing Development Authority and confirmed that HUD was correct. After receiving this clarification of Section 8 eligibility rules, Lexington Village ceased any efforts to terminate Plaintiff's tenancy.

At her August 12, 2009, deposition, Plaintiff stated that she no longer lives at Lexington Village but instead resides in Southfield, Michigan. At her deposition, Plaintiff testified that she still rents the apartment at Lexington Village, but she explained she uses the apartment as her church for the ministry she has started (The Worthy Cause Association and Ministry).

### III. LEGAL STANDARD

Summary judgment is appropriate only if the answers to the interrogatories, depositions, admissions, and pleadings, combined with any affidavits in support show that no genuine issue as to any material fact remains and that the moving party is entitled to a judgment as a matter of law. *See* FED. R. CIV. P. 56(c). A genuine issue of material fact exists when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)(citations omitted). In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 587 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324. The nonmoving party must do more than show that there is some metaphysical doubt as to the material facts. It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment. *See Moore v. Phillip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

## IV. ANALYSIS

**A.     The Fair Housing Act**

The FHA prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of…that person…" 42 U.S.C. § 3604(f)(2)(A). In *Giebeler v. M & B Associates*, 343 F.3d 1143, 1146 n.2 (9th Cir. 2003), the court determined that for purposes of discussing the FHA, "handicap" and "handicapped" can be used interchangeably with "disability" and "disabled."

The federal courts apply the same three-part evidentiary standard to fair housing claims as first developed for the employment discrimination context in *McDonnell Douglas Corp v. Green*,

8

411 U.S. 792 (1973). *See e.g., Marbly v. Home Properties of New York,* 205 F. Supp 2d 736 (E.D.Mich. 2002). Courts have adapted this test to fair housing claims by requiring the plaintiff to first establish a *prima facie* case of housing discrimination. The defendant must then offer a legitimate, non-discriminatory reason for the housing decision made and, finally, the plaintiff must show that the proffered reason is a pretext that masks discrimination. *Id*. at 740.

A *prima facie* case of housing discrimination may be established by proving either "disparate treatment" or "disparate impact." *Larkin v. State of Michigan Dept of Social Services,* 89 F 3d 285, 289 (6th Cir. 1996). Intentional, or disparate treatment, discrimination may be proved either by direct or circumstantial evidence. *Schanz v. The Village Apartments,* 998 F.Supp. 784, 788 (E.D. Mich.1998). To establish intentional discrimination using circumstantial evidence, the burden-shifting framework described in *McDonnell Douglas* is applied. *See e.g., Bogdan ex rel. Terry v. Service Specialties, II, Inc. ex rel. Davis*, No. 05-72186, 2006 U.S. Dist. WL 1494951 (E.D. Mich. May 25, 2006).

**B.   Direct Evidence of Discriminatory Intent**

If plaintiff presents direct evidence of discrimination, the Court does not need to "go through the *McDonnell Douglas* burden-shifting analysis." *Rowan v. Lockheed Martin Energy Systems, Inc.*, 360 F.3d 544, 548 (6th Cir.2004). "Direct evidence is evidence that proves the existence of a fact without requiring inferences." *Id*. Plaintiff claims that she was discriminated against when Defendants (1) served her with notices to quit for non-payment of rent and failure to maintain LIHTC eligibility; (2) failed to take action against Plaintiff's mother's boyfriend for assaulting Plaintiff; and (3) failed to take action against other tenants whose children had vandalized Plaintiff's car. None of this conduct proves disability discrimination on the part of Lexington Village without

9

requiring inferences. Therefore, these incidents do not constitute direct evidence of discrimination.

Moreover, as the following deposition answers demonstrate, Plaintiff acknowledged that none of Lexington Village's actions had anything to do with her claimed disabilities. When Plaintiff was asked whether Lexington Village's attempts to evict her were connected to her disability, she responded, "No, it doesn't have anything to do with my disability." When asked how Lexington Village's response to the vandalism to Plaintiff's car was based on her disability, she stated, "I never said that it harassed me based upon my disability." When defense counsel asked, "So this had nothing to do with your disability," Plaintiff replied, "No." Defense counsel also inquired how Lexington Village was discriminating against Plaintiff based upon her alleged disability when responding to the assault. Plaintiff stated, "I never claimed that they were." Finally, Plaintiff responded, "No" when asked, "But [the responses to the vandalism and assault] weren't in any way associated with your disability, correct?"

## C. Circumstantial Evidence of Discriminatory Intent

To establish intentional discrimination using circumstantial evidence, a plaintiff "must first make a *prima facie* showing of discrimination[,]" *Schanz,* 998 F.Supp. at 788, which requires a plaintiff to show: (1) she is the member of a protected class, *e.g.,* disabled; (2) defendants knew of plaintiff's disability; (3) plaintiff was willing to enjoy all rights available under the lease; and (4) defendants interfered with the plaintiff's rights. *Bogdan*, 2006 WL 1494951, at *7.

  1.  *Plaintiff cannot establish a prima facie case of discrimination*

        a.   Plaintiff cannot prove that she suffered from a disability

The FHA defines a "handicap" as: (1) a physical or mental impairment which substantially limits one or more of such person's major life activities; (2) a record of having such an impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 3602(h). The FHA regulations define "major life activities" to include "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, and speaking breathing, learning, and working." *Giebeler*, 343 F.3d at 1147 (quoting 24 C.F.R. §100.201(b) (2003)).

The Court finds that Plaintiff has produced no evidence of a disability cognizable under the FHA. Plaintiff first alleges that she was "in recovery from two separate surgeries" during the time of the alleged discrimination, both for a broken tibia. There is no evidence of how Plaintiff's broken tibia qualifies as a disability, and Plaintiff has produced no medical records to support this claim. The broken tibia was temporary and there is no evidence in the record that it substantially limited a major life activity. To the contrary, Plaintiff admitted that she was able to care for herself, including having the ability to cook, clean, bath, and shop. She claims to use a walker at times, however, she is able to jog in the "prosthetic boot" she received from the State of Michigan. Since breaking her tibia in February 2007, she has worked for Wayne County. Plaintiff also has attended college at local Detroit churches through Cornerstone University.

Plaintiff also claims that she has suffered from sporadic bouts of depression for many years. Plaintiff has not, however, produced any medical evidence to support this claim. Because there is a lack of case law examining disability due to depression in the context of the FHA, the Court looks to cases analyzed under the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101 *et seq*. The ADA has language that mirrors the FHA in all material respects, and courts often look to the ADA for guidance in interpreting the FHA. *Elmowitz v. Executive Towers at Lido, LLC*, 571

11

F.Supp.2d 370, 375 n.5 (E.D.N.Y. 2008). In *Pritchard v. The Southern Company Services, et al.*, 92 F.3d 1130, 1132 (11th Cir. 1996), the court found that, in order for depression to constitute a disability under the ADA, it must substantially limit a major life activity, *i.e.*, depression is not *per se* a disability.

In this case, even assuming Plaintiff suffers from depression, there is no evidence that her depression rises to the level of a disability. Plaintiff has not offered any evidence that the disability has severely limited a major life activity and her testimony demonstrates the opposite. Plaintiff is able to care for herself. She has worked, albeit not steadily, as recently as 2007. She has attended college courses through Cornerstone University and Wayne County Community College, and she is only three credit hours shy of earning her bachelor's degree. In addition, Plaintiff recently has started her own ministry. Finally, when asked during her deposition if she is able to live and care for herself, in light of her depression, Plaintiff responded, "Yes, I am very functional. I obtained my bachelor's degree during the whole process."

      b.  <u>Lexington Village had no knowledge of Plaintiff's alleged disability</u>

At her deposition, Plaintiff admitted that she did not tell Lexington Village that she suffered from depression. Further, Plaintiff was required to periodically complete Michigan State Housing Development Authority Program Checklists as part of her tenancy at Lexington Village. The checklists specifically ask whether the resident is receiving "disability or death benefits other than Social Security." Plaintiff always indicated that she was not receiving such benefits.

Although Defendants were aware that Plaintiff received some State Disability Assistance ("SDA") payments[3] at various times from 2005 to 2007, Defendants did not know (and assert that they still do not know) the reason for Plaintiff's receipt of SDA. This knowledge clearly does not translate into knowledge of a handicap within the meaning of the FHA.

      c.      <u>No evidence of interference with Plaintiff's tenancy rights</u>

The Court concludes that there is no evidence that Defendants actually interfered with Plaintiff's tenancy rights. Although Lexington Village served Plaintiff with Notices to Quit on four occasions, Defendants never sought to enforce them in court and Plaintiff's tenancy rights were never disturbed.

    *2.      Legitimate, nondiscriminatory reasons for Defendants' actions*

Defendants had legitimate, nondiscriminatory reasons for their challenged conduct. Each of the Notices to Quit was sent to Plaintiff either to: (a) enforce a provision of the lease (*i.e.*, the payment of rent); or (b) due to Plaintiff's failure to remain LIHTC eligible and Defendant's good faith belief that she was, therefore, no longer eligible to remain at Lexington Village. While Defendants were mistaken about Plaintiff's failure to maintain LIHTC eligibility affecting her Section 8 assistance, there is no evidence that this mistake was made in bad faith. Further, when Lexington Village learned of the mistake, all actions to terminate Plaintiff's tenancy ceased and Plaintiff remains a tenant of Lexington Village.

The Court also concludes that Plaintiff's claims of discrimination based on Defendants' lack of action with respect to: (a) the assault on her, and (b) the vandalism to her car are simply not

---

[3]Defendants have made numerous requests and filed a motion to have Plaintiff provide answers to Defendants' discovery responses or executed the medical and psychological releases sought by Defendants. Plaintiff has not provided those answers.

actionable under the FHA. Defendants are not required to address matters between private citizens who can seek recourse for their wrongs in the judicial system.

　　　　3.　　　*No pretext*

Plaintiff has produced no evidence to support a claim that Defendants' legitimate reasons for their actions were mere pretext for discrimination. To the contrary, Plaintiff admitted that the Notices to Quit, as well as Lexington Village's non-action regarding the vandalism to her car and her being assaulted, had nothing to do with her alleged disabilities. Accordingly, the Court concludes there is no genuine issue of material fact that the reasons given by Defendants for their actions were mere pretext.

　　　　4.　　　*Conclusion*

For the reasons set forth above, the Court concludes that there is no genuine issue of material fact that would support Plaintiff's claim of disability discrimination under the FHA. The Court therefore grants Defendants' Motion for Summary Judgment.

## V. CONCLUSION

Accordingly, and for the reasons set forth above, Defendants' Motion for Summary Judgment is GRANTED. Judgment shall be entered accordingly.

IT IS SO ORDERED.

　　　　　　　　　　　　　　　　　　　　S/Lawrence P. Zatkoff
　　　　　　　　　　　　　　　　　　　　LAWRENCE P. ZATKOFF
　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

Dated: March 11, 2010

CERTIFICATE OF SERVICE

       The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on March 11, 2010.

                                                          S/Marie E. Verlinde
                                                          Case Manager
                                                          (810) 984-3290